1 | **Salar Atrizadeh, Esq. (SBN: 255659)**
LAW OFFICES OF SALAR ATRIZADEH
2 | 9701 Wilshire Blvd., 10th Floor
Beverly Hills, CA 90212
3 | Telephone:  310-694-3034
Facsimile:   310-694-3057
4 | Email:      salar@atrizadeh.com

5 | Attorneys for Plaintiff
ARSLAN BHATTI

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11 | ARSLAN BHATTI, an individual,        Case No.:  2:14-cv-03226-ODW-RZ

12 |          Plaintiff,

13 | vs.                                   **FIRST-AMENDED COMPLAINT**

14 | ROGER GOLDMAN, an individual,   1.  VIOLATION OF RACKETEER
15 | TELECOM DEBT COLLECTION AND          INFLUENCED AND CORRUPT
CREDIT INFORMATION AGENCY,            ORGANIZATIONS ACT
16 | BANKAI GROUP, INC., BANKIM      2.  COPYRIGHT INFRINGEMENT IN
BRAHMBHATT, an individual,            VIOLATION OF 17 U.S.C. §§ 101 ET
17 | BROADBAND TELECOM, INC., and         SEQ.
DOES 1-10, inclusive,            3.  DEFAMATION—LIBEL PER SE
18 |                                  4.  CIVIL HARASSMENT IN VIOLATION
         Defendants.                      OF C.C.P. § 527.6
19 |                                  5.  EXTORTION IN VIOLATION OF
                                       PENAL CODE §§ 518 ET SEQ.
20 |                                  6.  INTENTIONAL INFLICTION OF
                                       EMOTIONAL DISTRESS
21 |                                  7.  NEGLIGENT INFLICTION OF
                                       EMOTIONAL DISTRESS
22 |                                  8.  DECLARATORY RELIEF

23 |                                  [DEMAND FOR JURY TRIAL]

24

25

26

27

28

_____
**1**
**FIRST-AMENDED COMPLAINT**

**COMES NOW PLAINTIFF, AND AVERS AND ALLEGES AGAINST DEFENDANTS, AND EACH OF THEM, AS FOLLOWS:**

<u>**JURISDICTION AND VENUE**</u>

1.  Jurisdiction is conferred upon this Court pursuant to 18 U.S.C. § 1961 et seq., 17 U.S.C. § 101 et seq., and/or 28 U.S.C. § 1331 et seq. in that the claims alleged herein arise under the laws of the United States of America.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal claims, and arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the United States Constitution.

2.  The Court has jurisdiction over Plaintiff's action for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 et seq. and Rules 57 and 65 of the Federal Rules of Civil Procedure.

3.  Venue is proper pursuant to 28 U.S.C. § 1391 et seq. because: (i) Defendants reside and/or conduct their business in this district; (ii) a substantial part of the events or omissions giving rise to the claim occurred in this district; or (iii) a substantial part of property that is the subject of this action is situated in this district.  Venue is also proper pursuant to 18 U.S.C. § 1965(a) because Defendants have agents or transact their affairs in this district.

<u>**THE PARTIES**</u>

4.  Plaintiff Arslan Bhatti ("Plaintiff") is, and at all times mentioned herein was, an individual residing in California, and at all times relevant herein was a citizen thereof.

5.  Defendant Roger Goldman ("Goldman") is, and at all times mentioned herein was, an individual residing in Tel Aviv, Israel, and at all times relevant herein was a citizen thereof.

6.  Defendant Telecom Debt Collection and Credit Information Agency ("TDCCIA") is, or

was a duly-registered entity in Israel, and did, or does business therein.

7. Defendant Bankai Group, Inc. ("Bankai Group") is, and at all times mentioned herein was, a duly-registered corporation in Delaware, and its headquarter is located in Singapore.

8. Defendant Bankim Brahmbhatt ("Brahmbhatt") is, and at all times mentioned herein was, an individual residing in New York, and at all times relevant herein was a citizen thereof. On information and belief, Defendant Brahmbhatt is president of Bankai Group.

9. Defendant Broadband Telecom, Inc. ("Broadband Telecom") is, and at all times mentioned herein was, a duly-registered corporation in California, and its headquarter is located in Los Angeles, California. On information and belief, Defendant Brahmbhatt is president of Broadband Telecom.

10. At this time, the true names of Does 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff sues these defendants by such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiff is informed and believes, and based on that information and belief alleges that, each of the defendants designated as a Doe is legally responsible for the events and happenings referred to in this First-Amended Complaint, and unlawfully caused the injuries and damages to Plaintiff alleged herein.

11. Plaintiff is informed and believes, and based on that information and belief alleges that, at all times mentioned in this First-Amended Complaint, defendants were the agents and employees of their co-defendants, and in doing the things alleged in this First-Amended Complaint, were acting within the course and scope of such agency and employment.

## COMMON FACTS AND GENERAL ALLEGATIONS

12. This action arises from the misconduct of Defendants, and each of them, who have engaged in conduct constituting, *inter alia*, racketeering, copyright infringement, defamation, civil harassment, extortion, and intentional or negligent infliction of emotional distress.

13. Plaintiff was an agent, representative, or employee of AKCommunication, Inc., a California corporation, dba AKC, Inc. ("AKCommunication"), which is a high-tech telecommunication company.

14. On or about March 19, 2009, AKCommunication executed a Unilateral Sell Agreement ("Agreement") with Broadband Telecom, which is Bankai Group's subsidiary and/or affiliate. On information and belief, between March 19, 2009, and until recently, AKCommunication engaged in business transactions with Bankai Group, its subsidiaries and/or affiliates, including, but not necessarily limited to, Broadband Telecom.

15. On information and belief, between August 2013 and October 2013, AKCommunication incurred a business debt in the amount of approximately $88,171 ("Business Debt") towards Bankai Group and/or Broadband Telecom.  Thereafter, on or about April 23, 2014, AKCommunication filed for bankruptcy in the United States Bankruptcy Court (Central District of California) under case number 2:14-bk-17780-BR.

16. On information and belief, Defendant Brahmbhatt travels to and from Los Angeles, California and Kew Gardens, New York, in order to carry out his official responsibilities towards Defendants Bankai Group and Broadband Telecom.  As mentioned hereinabove, Defendant Broadband Telecom is a duly-registered corporation in California, wherein according to the California Secretary of State's website, Defendant Brahmbhatt serves as its official agent for service of process.

17. On or about March 2014, as a result of late or non-payment by AKCommunication, Bankai Group, Broadband Telecom, their agents or representatives, including, but not necessarily limited to, Defendant Brahmbhatt, hired Defendants Goldman and/or TDCCIA to collect the Business Debt.

18. Defendant Brahmbhatt employed Defendants Goldman and/or TDCCIA in order to collect

_____
**4**
**FIRST-AMENDED COMPLAINT**

the Business Debt from Plaintiff.  As such, Defendant Brahmbhatt engaged in contracts within California, which required performance in this jurisdiction.  Furthermore, Defendant Brahmbhatt deliberately employed persons and/or entities, including, but not limited to, Broadband Telecom, its agents or representatives, for the purpose of conducting business in California, and/or collecting the Business Debt against Plaintiff.

19. Defendant Brahmbhatt knew or should have known that Plaintiff is not directly responsible for the Business Debt as it constitutes a commercial liability.  Moreover, Plaintiff did neither personally guaranty the Business Debt nor any other commercial liability, arising out of the respective parties' business transactions.

20. On or about March 2014, Defendants Brahmbhatt and Goldman formed a series of enterprises, including, but not limited to, TDCCIA, for the purpose of committing racketeering activity, including, but not limited to, extortion and blackmail.  They formed the aforesaid enterprise(s) online, by and through internet websites, including, but not limited to, www.tdccia.com, in order to engage in the collection of debts.  The collection of debts, which was executed by and through internet websites, was intended to alarm, annoy, and harass the victims by making online threats towards them.

21. Defendants' internet websites, include, but may not be limited to, the following links:

    a.  http://tdccia.blogspot.com/2014/03/voip-fraudsters-and-telecom-crooks_19.html
    b.  http://tdccia.blogspot.com/2014/03/voip-bandits-arslan-hayat-bhatti-kashan.html
    c.  http://tdccia.blogspot.com/2014_03_01_archive.html
    d.  http://www.youtube.com/watch?v=kGmx4ZGHu4I
    e.  http://www.youtube.com/user/TDCCIA
    f.  https://twitter.com/TDCCIA
    g.  https://www.facebook.com/pages/Telecom-Debt-Collection-Credit-Information-Agency-TDCCIA/160920407272759
    h.  https://plus.google.com/100135855549843622379/posts
    i.  https://plus.google.com/104533941048067254439/posts
    j.  http://akcommunicationincfraud.blogspot.com
    k.  facebook.com/roger.goldman.77

22. On information and belief, Defendant Goldman is the president or vice-president of TDCCIA.  Defendant Goldman was hired by Defendants Bankai Group, Broadband Telecom, and/or Brahmbhatt to engage in debt collection practices against Plaintiff. However, as mentioned hereinabove, the Business Debt is owed by AKCommunication, and not by Plaintiff, in his individual capacity.

23. On or about March 2014, Defendants, including, but not limited to, Defendant Goldman and Defendant Brahmbhatt, were employed by or associated with the debt collection enterprise (e.g., TDCCIA).  Their activities affected interstate or foreign commerce since they took place on the internet.  Defendants conducted or participated, directly or indirectly, in TDCCIA's affairs through a pattern of racketeering activity, including, but not necessarily limited to, extortion and blackmail, or collection of debt against Plaintiff. Moreover, Defendants conspired to engage in the debt collection enterprise in order to alarm, annoy, and harass their victims by engaging in extortion and/or blackmail using various technologies, including, but not limited to, the internet, telephone, email, text, and/or facsimile.

24. Defendants and their agents or representatives have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy.  On or about March 2014, Defendants hired numerous individuals and/or entities, in order to establish or operate the debt collection enterprise (e.g., TDCCIA).  These individuals and/or entities acted as their agents or representatives who were charged with the task of launching online campaigns and posting online statements, images, and/or videos regarding their victims.

25. On or about April 17, 2014, Plaintiff submitted his application for his copyrighted works, entitled as Arslan Hayat Bhatti (collectively "Works") to the United States Copyright Office.  Plaintiff is waiting to receive the Certificate of Registration at this time. The

exclusive copyrights in the Works have been assigned to Plaintiff, who is the owner of the copyrights, with the right to sue for copyright infringement thereon and recover for infringement thereof.

26. On or about March 2014, Defendants posted the Works on several websites, including, but not limited to, Blogspot, Facebook, Twitter, YouTube, and Google (singularly referred to as "ISP" and collectively referred to as "ISPs") without Plaintiff's knowledge, consent, or authorization.  On information and belief, the ISP associated with each Defendant and/or Doe Defendant is located in California.

27. On or about March 2014, Defendants published online statements on the aforesaid ISPs about Plaintiff, his relatives, and/or family.  In addition, Defendants posted several videos on YouTube regarding Plaintiff, his relatives, and/or family.

28. On or about March 2014, Defendants stated that: (a) Plaintiff used forged identity documents, including passports, so as to acquire [United States] immigration; (b) Plaintiff is a crook with the intention of making a mint by defrauding legitimate companies, smuggling illegal immigrants into the [United States] and making/selling unlawful adult movies; (c) Plaintiff's father was an infamous hooligan and cattle rustler before migrating to the [United States]; (d) Plaintiff, and his family, engage in organized crime activities, including human smuggling into the [United States] and making/selling adult movies; (e) Plaintiff, and his family, are involved in gold laundering; and (f) Plaintiff, and his family, hire illegal immigrants to engage in various criminal activities.

29. The publications referred to Plaintiff by his name, were made of and concerning Plaintiff, and were so understood by those who read the publications.  In fact, the statements are false as they pertain to Plaintiff and/or his family. The publications are libelous on their

face. They clearly expose Plaintiff to hatred, contempt, ridicule, and obloquy because the statements disparage Plaintiff in the eyes of his friends, colleagues, and community.

30. The publications were seen and read by several individuals who are users, members, subscribers, or visitors of the aforementioned ISPs.   As a proximate result of the publications, Plaintiff has suffered from loss of reputation, shame, mortification, and injury to his feelings, causing damages more than the jurisdictional amount.  As a proximate result of the publications, Plaintiff has been forced to seek professional medical assistance due to his physical, mental, and emotional distress.

31. The publications were not privileged because they were published by Defendants with malicious intent to harm Plaintiff due to their untrue, exaggerated, and harmful nature.

32. Defendants used force or threat of force against Plaintiff to induce him to pay the Business Debt.  As stated hereinabove, the repayment of the Business Debt is not Plaintiff's personal responsibility as it was incurred during the course of commercial transactions.

33. On or about March 28, 2014, Rohan Barot, Chanderhas Rana, Aayush Barot, Bipin Lavri, and/or Chorottil Priyadarsan, who are agents or representatives of Defendants Bankai Group and/or Broadband Telecom, telephoned and/or emailed Plaintiff repetitively in order to demand payment of the Business Debt.

34. On or about April 3, 2014, Defendant Goldman emailed Plaintiff and advised him that he will send a detective from [Tel Aviv, Israel to Los Angeles, California] to investigate Plaintiff, and follow him around to find his other business activities.  In the same email, Defendant Goldman conceded that he was hired by Defendant Bankai Group, its subsidiaries and/or affiliates (e.g., Broadband Telecom) in order to collect the Business Debt.  Moreover, Defendant Goldman stated that if the demanded funds were not received by his client (i.e., Broadband Telecom) on or before April 7, 2014, he will proceed to file

criminal charges against Plaintiff, his family, and everyone else who is involved in the alleged scam.

35. On or about April 4, 2014, Defendant Goldman emailed Plaintiff and advised him that he will be shutting down Plaintiff's bank accounts and securing warrants for his arrest across the globe.

36. On or about April 8, 2014, Defendant Goldman emailed Plaintiff and apprised him of a disturbing initial report from an investigator regarding Plaintiff.   Therein, Defendant Goldman stated that the entire report will be published in the form of a documentary and made public shortly.

37. In addition, on or about April 11, 2014, Defendant Goldman emailed Plaintiff and submitted a video, which fabricates Plaintiff's involvement in making/selling unlawful adult movies.   In the same email, Defendant Goldman demanded payment of One Thousand Dollars ($1,000) from Plaintiff by a certain date.

38. In fact, due to the abovementioned incidents, Plaintiff was in fear for his own and/or his family's life and safety.  As a result, on or about April 15, 2014, Plaintiff made a payment to Defendants via cashier's check or bank wire transaction.  On or about April 17, 2014, Defendant Goldman acknowledged receipt of the aforesaid payment.  As such, Defendants obtained property from Plaintiff, which was induced by a wrongful use of force or fear.

39. Due to Defendants' malfeasance, misfeasance, or misconduct, Plaintiff's income has decreased substantially, as he is unable to secure employment, as a result of the above-listed online statements.  Therefore, Plaintiff seeks damages in an amount in excess of $75,000, due to Defendants' malice in publishing the online statements, images, or videos.

40. Based on the foregoing, an actual controversy has arisen, and now exists, between Plaintiff and Defendants concerning their respective rights and duties.  As such, a judicial

declaration is necessary and appropriate at this time in order for the parties to ascertain their rights and duties pursuant to applicable laws.

### FIRST CAUSE OF ACTION
**Violation of Racketeer Influenced and Corrupt Organizations Act**
**(Against All Defendants)**

41. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 40 as though fully set forth herein.

42. This claim arises under 18 U.S.C § 1951, and 18 U.S.C. § 1964, and seeks to recover actual and treble damages based upon Defendants' violations of 18 U.S.C. § 1962, as described more fully hereinbelow.

43. At all times relevant hereto, Plaintiff and each of the Defendants constituted a "person" within the meaning of 18 U.S.C. § 1961(3).

44. Plaintiff is informed and believes and on that basis alleges that Defendants, and each of them, are and have at all relevant times been engaged in interstate and foreign commerce.

45. In fact, 18 U.S.C. § 1961(4) defines the term "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

46. At all times relevant hereto, pursuant to written and oral agreements between and among Defendants, as well as their course of conduct, Defendants have formed a series of enterprises, within the meaning of 18 U.S.C. §1961(4), for the purpose of committing numerous acts of racketeering activity, including, but not limited to, extortion and blackmail, and violations of California criminal statutes, including, but not necessarily limited to, Penal Code §§ 518 et seq.

47. Defendants participated in the conduct of each of these enterprises' affairs through a pattern of racketeering activity, as defined in 18 U.S.C. §1961(5), that consisted of at least

two acts of racketeering activity within a 10-year period.  In fact, each act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting similar victims, including, but not necessarily limited to, Plaintiff, his relatives, and/or family.

48. The general pattern of racketeering activity is as follows: Defendants launch online campaigns against numerous victims, including, but not necessarily limited to, Plaintiff and his relatives or family.   In these campaigns, Defendants post online statements, images, and/or videos regarding their victims that are seriously alarming, annoying, or harassing to the victims.  Defendants post untruthful, embarrassing, and disparaging statements, wherein they serve no legitimate purpose whatsoever.  Moreover, Defendants contact their victims via internet, telephone, email, text, and/or facsimile, and demand payment using actual or threatened force, violence, or fear to blackmail these victims.  If the victims fail or refuse to comply with their demands to remit funds, Defendants retaliate by continuing their tirade and disseminating the online campaigns.

49. 18 U.S.C. § 1961(1) provides that a "person" commits an act of "racketeering activity" by engaging in: (a) any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year; and/or (b) any act which is indictable under any of a number of provisions of federal law.

50. Defendants engaged in numerous predicate acts of racketeering activity in violation of state and federal laws. Defendants' activities, as detailed herein, constitute, *inter alia*, acts of extortion, which are prohibited under California Penal Code §§ 518 et seq., and are punishable by imprisonment for more than one year.

51. The specific predicate acts of racketeering activity engaged in by Defendants are outlined hereinabove, including, but not limited to, paragraphs 20-24 and 32-38.

_____

**11**
**FIRST-AMENDED COMPLAINT**

52. Defendants' multiple acts of racketeering activity, committed as described herein, were related to each other, and amounted to, or posed a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity" as defined under 18 U.S.C. § 1961(5).  In violation of, 18 U.S.C. § 1962, Defendants, and each of them conducted, or participated in the conduct of each of the above-referenced enterprise's affairs, through a pattern of racketeering activity as described herein.

53. On information and belief, each of the Defendants agreed to join, and did join, the racketeering conspiracy alleged hereinabove.  On information and belief, each of the Defendants agreed to commit, and did commit, at least two predicate acts that were part of the pattern of racketeering activity, knowing that those predicate acts were part of a pattern of racketeering activity.  By participating in this racketeering conspiracy, Defendants, and each of them, violated 18 U.S.C. § 1962.

54. As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1962, as alleged herein, Plaintiff has been deprived of personal property, wages, and other income for services actually performed, and otherwise injured in his business or property. Moreover, pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to bring this action on his own behalf in order to recover actual and treble damages, costs of bringing this lawsuit, and reasonable attorney's fees.

### SECOND CAUSE OF ACTION
**Copyright Infringement in Violation of 17 U.S.C. §§ 101 et seq.**
**(Against All Defendants)**

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 54 as though fully set forth herein.

56. As stated hereinabove, Plaintiff has submitted his application for the Works to the United States Copyright Office and is waiting to receive the Certificate of Registration at this time.

The exclusive copyrights in the Works have been assigned to Plaintiff, who is the owner of the copyright, with the right to sue for copyright infringement thereon and recover for infringement thereof.

57. On information and belief, there are substantial similarities between the Works covered by Plaintiff and Defendants' duplicated or manipulated work.

58. Plaintiff's Works are photographs or images that he has either taken or obtained from third parties with their consent and authorization.

59. Defendants' infringing work is a duplication of Plaintiff's Works, which is altered by using special software.  Defendants' software incorporates substantially similar elements to Plaintiff's Works and produces substantially similar photographs or images.

60. On information and belief, Defendants, with the actual knowledge that the Works were protected by copyright laws, are willfully and deliberately infringing the Works. Defendants are contributing to, or inducing said infringement in the United States, and within this District, without the authority of Plaintiff, and in violation of 17 U.S.C. §§ 101 et seq., and will continue to do so unless enjoined by this Honorable Court.

61. Plaintiff has suffered damage by reason of Defendants' infringement and will suffer additional irreparable damage and impairment of the value of the copyrights, including, but not limited to, lost profits in the sale of services or products, which embody the protected Works, unless Defendants are enjoined from continuing their infringement.

62. On information and belief, the acts of infringement by Defendants have been and are being committed with full knowledge of Plaintiff's legal rights, and a willful or wanton disregard thereof.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CAUSE OF ACTION
### Defamation—Libel Per Se
### (Against All Defendants)

63. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 62 as though fully set forth herein.

64. As alleged hereinabove, within one year of the filing of this action, Defendants published online statements on the ISPs by using known or unknown usernames.  The unknown usernames were used to mask Defendants' true identities and to permit them to defame Plaintiff.

65. The online statements were published to those other than Plaintiff, and in fact, many users, members, subscribers, or visitors have been able to discover and read them.

66. The publications can reasonably be understood to be of and concerning Plaintiff, and in fact, they specifically identify Plaintiff by his name, and thus leave no doubt that the publications were about Plaintiff and no one else.  Moreover, the publications were disseminated amongst the general public.

67. The publications tend to harm the reputation and image of Plaintiff on their face (i.e., they are libel per se), in that they impute incompetence or misconduct, and make allegations injurious to Plaintiff's personality, demeanor, and standing.  The publications tend to lower Plaintiff in the esteem of his peers, cause him to be shunned by friends, and expose him to hatred, ridicule, and contempt.

68. The publications are demonstrably false, are incorrect factual statements and incapable of being conclusively established to be true.

69. The publications are demonstrably false, in that they purposefully stated only bits and pieces of discrete facts that, may or may not have been correct in, and of themselves, but such facts were presented out of context, and combined with false comments, and

_____
**14**

innuendos of Defendants' own fabrication that, when considered as a whole, conveyed

false meanings to the readers by implying meanings that are untrue.

70. The publications were not privileged and were not opinions.  At the time Defendants

published them, Defendants knew the statements were false, or had reckless disregard for

their falsity, and therefore acted with actual malice.

71. Defendants' publication of such false and defamatory statements did, in fact, directly and

proximately result in the following: (i) harm to Plaintiff's name and reputation; (ii)

Plaintiff's shame, mortification, and hurt feelings resulting in severe emotional distress;

and (iii) other harm to Plaintiff's reputation in addition to those implied and assumed by

law.

72. As a direct and proximate consequence of such libel per se stated herein, Plaintiff has been

generally, specially, and consequentially damaged in an amount to be established according

to evidence.

73. The aforementioned libel per se was committed willfully and intentionally and by means of

oppression, fraud, and malice, and in conscious disregard of Plaintiff's rights. Therefore,

Plaintiff is entitled to an award of exemplary or punitive damages under California Civil

Code § 3294 in an amount to be established at trial to meaningfully punish Defendants, and

to thereby deter similar conduct in the future. Punitive damages are especially appropriate

in this case because of Defendants' past pattern of oppressive and harassing conduct.

74. Defendants' libel per se alleged herein, unless enjoined by a preliminary injunction order

and a permanent injunction judgment of this Honorable Court, will continue to cause great

and irreparable injury to Plaintiff.  The Plaintiff has no adequate remedy at law for injuries

that he is currently suffering from Defendants' libel per se.

**FOURTH CAUSE OF ACTION**
**Civil Harassment in Violation of C.C.P. § 527.6**
**(Against All Defendants)**

75. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 74 as though fully set forth herein.

76. Defendants' wrongful conduct, as alleged hereinabove, though not threatening violence, nevertheless was "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." As such, such misconduct constitutes civil harassment, under C.C.P. § 527.6, as well as, misdemeanor crime, under Penal Code §§ 653m and 653.2. Stated otherwise, the "course of conduct [was] such as would cause a reasonable person to suffer substantial emotional distress, and [did] actually cause substantial emotional distress to the [Plaintiff]" as required by C.C.P. § 527.6.

77. As alleged hereinbelow, Plaintiff did, in fact, suffer severe emotional distress as a direct consequence of Defendants' harassment.

78. As a direct and proximate consequence of Defendants' harassment alleged herein, Plaintiff has been generally, specially, and consequentially damaged in the amount to be established according to evidence.

79. Under C.C.P. § 527.6(r), Plaintiff is entitled to an award of the attorney's fees that he incurs to prosecute an action seeking an injunction pursuant to C.C.P. § 527.6.

80. The aforementioned civil harassment was committed willfully and intentionally, and by means of oppression, fraud, and malice, and in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages under California Civil Code § 3294, in an amount to be established at trial, in order to meaningfully punish Defendants, and to thereby deter similar conduct in the future.

1    Punitive damages are especially appropriate because of Defendants' past pattern of

2    oppressive and harassing conduct.

3    81. Defendants' harassment alleged herein, unless enjoined by a preliminary injunction order

4    and a permanent injunction judgment of this Honorable Court (or in the alternative,

5    statutory temporary restraining order and three-year injunction under C.C.P. § 527.6) will

6    continue to cause great and irreparable injury to Plaintiff.  As such, Plaintiff has no

7    adequate remedy at law for injuries that he is currently suffering, and are threatened to be

8    suffered from Defendants' harassment and illegal conduct.

### FIFTH CAUSE OF ACTION
**Extortion in Violation of Penal Code §§ 518 et seq.**
**(Against All Defendants)**

82. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 81 as though fully

set forth herein.

83. Defendants committed extortion by the obtaining of property from Plaintiff, with his

consent, or the obtaining of an official act of a public officer, induced by a wrongful use of

force or fear, or under color of official right.

   a.   In this case, fear was induced by a threat, either: (a) To do an unlawful injury to

        Plaintiff or his property; (b) To accuse Plaintiff, his relatives, or family members of

        a crime; (c) To expose, or to impute to Plaintiff, a deformity, disgrace, or crime; (d)

        To expose a secret affecting Plaintiff or his relatives or family; or (e) To report

        Plaintiff's immigration status or suspected immigration status.

84. Defendants' threats to report a crime constitute extortion because the threats were coupled

with demands for money, even if Plaintiff did in fact commit a crime, and regardless of

whether Plaintiff in fact owed the money demanded.  *Mendoza v. Hamzeh*, 215 Cal. App.

4th 799 (Cal. App. 2d Dist. 2013).

85. Defendants are guilty of extortion, pursuant to Penal Code § 520, wherein they extorted money or other property from Plaintiff by means of force, or any threat, as mentioned in Penal Code § 519, and shall be punished by imprisonment for two, three or four years.

86. Moreover, Defendants, who attempted, by means of threats, as specified in Penal Code § 519, to extort money, or other property from Plaintiff, may be punished pursuant to Penal Code § 524, by imprisonment in the county jail or state prison, or by fine not exceeding ten thousand dollars ($10,000), or by both such fine and imprisonment.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

87. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 86 as though fully set forth herein.

88. Defendants' extreme and outrageous conduct alleged herein, including, but not limited to, harassment and defamation were intentionally and maliciously committed with the intent to deliberately inflict humiliation, mental anguish, emotional and physical distress upon Plaintiff, and done in wanton and reckless disregard of such consequences towards Plaintiff.

89. As a direct and proximate result of the aforesaid extreme and outrageous conduct by Defendants, Plaintiff did, in fact, suffer humiliation, mental anguish, emotional and physical distress, and has been hurt and injured in his health, strength and activity, sustaining injury to his nervous system and person, all of which have caused, continue to cause, and will probably continue to cause Plaintiff great mental, physical and nervous pain and suffering.

90. As a result of such severe emotional distress, Plaintiff has been generally, specially, and consequentially damaged in an amount to be established according to evidence.

91. Defendants committed the aforementioned infliction of emotional distress willfully and intentionally, and by means of oppression, fraud, and malice, and in conscious disregard of Plaintiff's rights. Therefore, Plaintiff is entitled to an award of exemplary or punitive damages under California Civil Code § 3294, in an amount to be established at trial to meaningfully punish Defendants, and to thereby deter similar conduct in the future. Punitive damages are especially appropriate because of Defendants' past pattern of oppressive and harassing conduct.

## SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Against All Defendants)

92. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93. Defendants, at relevant times, owed Plaintiff various duties of care, including, but not limited to, those reasonably necessary to avoid inflicting humiliation, mental anguish, emotional and physical distress upon Plaintiff.   Defendants, and each of them, knew, or should have known that their failure to exercise such due care would cause Plaintiff to suffer humiliation, mental anguish, emotional and physical distress.

94. Defendants breached their duties of care towards Plaintiff by committing the extreme and outrageous acts and omissions alleged herein, including, but not limited to, harassment and defamation, and did so with reckless disregard for the probability of causing emotional distress to Plaintiff.

95. As a direct and proximate result of such breaches constituting negligence, Plaintiff did, in fact, suffer humiliation, mental anguish, emotional and physical distress, and has been hurt and injured in his health, strength, and activity, sustaining injury to his nervous system and person, all of which have caused, continue to cause and will continue to cause Plaintiff

---

great mental, physical and nervous pain and suffering.

96. As a result of such severe emotional distress, Plaintiff has been generally, specially, and consequentially damaged in an amount to be established according to evidence.

## EIGHTH CAUSE OF ACTION
### Declaratory Relief
### (Against All Defendants)

97. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 96 as though fully set forth herein.

98. An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties.

99. As such, a judicial declaration is necessary and appropriate at this time in order for the parties to ascertain their rights and duties under applicable laws.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1. For monetary damages in excess of $75,000 or according to proof;

2. For threefold the damages actually sustained, and costs of the lawsuit, in a sum not less than $75,000, including, but not limited to, reasonable attorney's fees, pursuant to 18 U.S.C. § 1964(c), with interest thereon at the rate of 10% per annum;

3. For statutory damages in the amount of no less than $150,000 for copyright infringement pursuant to 17 U.S.C. § 504(c);

4. For punitive and exemplary damages;

5. For temporary and permanent injunctive relief;

6. For interest at the legal rate according to proof;

7. For attorney's fees and costs of suit incurred herein; and

8.  For such other and further relief as the Court may deem just and proper.

Dated:  September 30, 2014        **LAW OFFICES OF SALAR ATRIZADEH**


By:   /s/  Salar Atrizadeh
      SALAR ATRIZADEH, ESQ.
      Attorneys for Plaintiff
      ARSLAN BHATTI

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>VERIFICATION</u>**

I, ARSLAN BHATTI, the undersigned, certify and declare that, I am a party to this action. I have read the foregoing First-Amended Complaint and know and understand its contents thereof.  The matters stated herein, are true of my own knowledge and belief, except as to those matters alleged and/or stated on my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and accurate.

Executed on September 30, 2014, in Los Angeles, California.

_____

ARSLAN BHATTI